### UNITED STATES of America
v.
### Persavel L. BRIGHT, Ronald R. Moore.
### CR. No. 82–227.

United States District Court, District of Columbia.

Nov. 5, 1982.

Roxanne Sokolove, Dept. of Justice, Washington, D.C., for plaintiff.

Richard S. Stern, William J. Garber, Washington, D.C., for defendants.

### MEMORANDUM AND ORDER

JOHN GARRETT PENN, District Judge.

The defendants are charged, in a six count indictment filed on July 29, 1982, with conspiracy to distribute controlled sub-

stances (21 U.S.C. § 846), unlawful use of a communication facility (21 U.S.C. § 843(b)), unlawful possession with intent to distribute controlled substances (21 U.S.C. § 841(a), unlawful possession of a controlled substance (21 U.S.C. § 844), aiding and abetting (18 U.S.C. § 2), and carrying a pistol without a license (D.C.Code Ann. § 22–3204 (1981)).

The case is now before the Court on defendants' motions to dismiss the indictment, Moore's motion for severance of counts 2, 3, 4 and 6 from the remaining counts in the indictment, Bright's oral motion for severance and for separate trial, Moore's motion to suppress evidence found at 514 Missouri Avenue, N.W. and evidence found in the pickup truck, and Bright's motion to suppress evidence found in the pickup truck. The Court held an evidentiary hearing on October 20, 1982 and heard arguments on November 1, 1982. For the reasons set forth below, the Court concludes that the defendants' motions must be denied.

I

Briefly, the relevant facts as found by the Court are as follows: In early June 1982, a person identified as Robin Smith, sometimes referred to as the "special employee", and hereinafter simply referred to as "SE", contacted officers of the Metropolitan Police Department, and advised them that she had met persons involved in the distribution of cocaine and other drugs. She offered her services in any police investigation. After police officers determined that she had worked with police departments in New Jersey and had furnished information leading to arrests and convictions in that state, they met with her and discussed information she had concerning Moore. She advised them that she had lived with Moore for two weeks and had observed marijuana and cocaine in his house located at 514 Missouri Avenue, N.W. in the District of Columbia.

Working with the police, SE arranged for an undercover officer to buy cocaine and marijuana from Bright and Moore. The transaction was to take place on June 8, 1982, at the Capital City Inn on New York Avenue, N.E., in the District of Columbia. On that date, SE and an undercover officer met with Moore and Bright in a motel room. Police officers were in an adjoining room and conversations in the room where the meeting took place were monitored by a body recorder secreted in the room. Moore and Bright arrived in a pickup truck and when they entered the room they had a conversation with SE and the undercover officer concerning the purchase of drugs, but after Bright carefully examined the money offered by the undercover officer, he apparently concluded that the money was marked and indicated that he was leaving. Both defendants left the room and returned to the pickup truck. They began to drive away. SE advised the police that she thought the drugs were in the truck and the officers radioed other officers on the street to stop the truck and arrest the defendants on a conspiracy charge.

The truck in which the defendants were riding was stopped, they were arrested, and the truck searched. A gun and a small amount of narcotics were found in the back of the truck in a separate compartment from where the defendants were seated. Although the police state that in searching the truck they were also searching for a gun, based upon comments made earlier by Moore that he might bring a gun, they concede that the search was not a protective search but was a search for contraband.

Thereafter, officers prepared affidavits in support of search warrants for Moore's residence at 514 Missouri Avenue, N.W., and Bright's residence at 5110 Seventh Street, N.W.; both addresses in the District of Columbia. They presented the affidavits and warrants to a Superior Court judge at 1:00 a.m. on June 9, 1982. In the presence of the judge, Officer Hickson added a sentence to the affidavit in support of the search warrant for 514 Missouri Avenue, N.W., by printing "the special employee, within the last seventy-two has been inside of 514 Missouri Ave NW and has observed both cocaine and marijuana within the

premises." The reference to "seventy-two" is crossed out, and inserted above is "forty-eight hours". The initials "DPH", referring to Daniel Hickson, appear next to the hand-printed sentence. Hickson was sworn to the affidavit by the judge, and the judge signed the search warrant authorizing the search "for the entire premises of 514 Missouri Avenue, Northwest, Washington, D.C. The premises are described as a two story, brick row house, single family dwelling." The warrant authorizes the officers to execute the warrant "at any time of the day or night" and also authorizes them to search "without giving notice of identity and purpose."

When the officers arrived at 514 Missouri Avenue, they knocked and Moore's parents opened the door. Moore's parents lived in a separate apartment on the second floor and Moore lived on the first floor and the basement. The house resembled a single family dwelling. There is one locked entrance to the house, and all mail is delivered through a common mail slot in that door. Inside, there are two separate apartments, one shared by Moore's parents, and one occupied by Moore. The parents have lived in their apartment since 1958 and Moore has lived in his apartment for three or four years. Prior to Moore moving in, the first floor apartment was occupied by different families over a period of years. Neither apartment is identified by an apartment number although the apartment occupied by Moore's parents, Mr. and Mrs. Henderson, has a name plate over the door marked "Henderson". Moore does not have a key for his parents apartment and they do not have a key for his apartment. When SE spent several nights with Moore in the house, she occupied the first floor apartment.

The officers also searched a garage in the back yard which is used for storage. The garage is not described in either the affidavit or the warrant. While Mr. Henderson accompanied the officers to the garage, neither he nor his wife actually consented to the search; rather, they simply did as they were told.

The police found cocaine and marijuana in Moore's apartment.

## II

The first motion to be addressed is the motion to dismiss filed pursuant to the Speedy Trial Act (STA), 18 U.S.C. § 3161 *et seq.* The defendants were arrested on June 8, 1982. On July 7, 1982, the complaints as to both defendants were dismissed on the motion filed by the United States. The present indictment was filed on July 29, 1982. The defendants argue that the indictment should now be dismissed because it was not filed within 30 days of their arrest as required by the STA, 18 U.S.C. § 3161(b).

The Court concludes that this argument is without merit since the complaints were originally dismissed on July 7, 1982, *within* 30 days of the arrest. Although it seems advisable, in those cases where the Government cannot return an indictment within 30 days, for the Government to seek an extension pursuant to 18 U.S.C. § 3161(h), the Court concludes that there was no violation of the STA because the Government dismissed the complaints *prior* to the expiration of the 30-day period. *See United States v. Fisher,* Crim. No. 82–237 (D.D.C. October 8, 1982); *United States v. Borum,* 544 F.Supp. 170 (D.D.C.1982). The facts in this case, and the two cases cited above, are distinguishable from those of *United States v. Ford,* 532 F.Supp. 352 (D.D.C.1982), in which the court dismissed the indictment where the Government did not dismiss the original charge until *after* the 30-day period expired. The subsequent indictment was dismissed. Finally, in this regard, the Court notes that the defendants do not allege that there has been a violation of their rights to due process. *See United States v. MacDonald,* 436 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982).

The motions to dismiss are denied.

## III

Moore moves to sever counts 2, 3, 4 and 6 on the grounds that they are not properly joinable. As the Court under-

stands it, Bright orally joins in that motion. The motions are denied.

All of the offenses described in the indictment allegedly arose out of the same acts or transactions. Count 1 charges a conspiracy to distribute controlled substances; cocaine and marijuana. Counts 2 and 3 charge possession of the controlled substances with intent to distribute. Here the indictment refers to the same controlled substances as are the subject of the conspiracy in Count 1. Count 4 refers to the hashish found in the pickup truck when the defendants allegedly walked out of the motel and attempted to drive away. Count 6 refers to the gun which was found at the same time during the search of the pickup truck. Count 5 refers to the telephone conversation between the defendants and SE, which was recorded, in setting up the transaction which allegedly was to take place in the motel room. Since all of the above charges joined in the indictment are based on the same acts and transactions, they are properly joined under Fed.R.Crim.P. 8(a).

Addressing Bright's separate oral motion for severance, the Court finds that the defendants are properly joined for trial pursuant to Fed.R.Crim.P. 8(b) for the same reasons that the charges are properly joined in one indictment.

Last, the Court observes that the defendants have failed to demonstrate prejudicial joinder under Fed.R.Crim.P. 14. The Court, on any motion under Rule 14, must weigh the advantage and the economy of joint trial against the possible prejudice to the defendant. As noted, defendants have failed to demonstrate prejudice. Under the facts presently known to the Court, a jury should have no difficulty in following the Court's instructions or keeping separate the evidence relating to each defendant.

The motions to sever the counts in the indictment and to sever the defendants are denied.

## IV

■ The final motions filed by the defendants are the motions to suppress evidence found in the pickup truck and at 514 Missouri Avenue, N.W.

As to the evidence found in the pickup truck, the Court concludes that the motion to suppress should be denied. Based upon the statements of SE and her taped conversations with Moore, and the conversation which took place during the meeting of SE, the undercover officers, and the defendants in the motel room on June 8, 1982, the officers had probable cause to arrest both defendants for conspiracy. Moreover, during the conversations in the motel room, the defendants indicated that the drugs were five minutes away, and SE suggested that the drugs might be in the truck. An assumption that the drugs were in the truck is reasonable in view of the fact that the parties had met at the motel to conduct a drug transaction. It seems logical to infer that the defendants would not have the drugs on their person when they entered the motel room, but would have them close by. Accordingly, the officers had probable cause to stop the truck arrest the defendants and having done so, to search the truck. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The motion to suppress the evidence taken from the pickup truck is denied.

The motion to suppress the evidence found at 514 Missouri Avenue, N.W. raises substantially different issues. In attempting to obtain a search warrant for the premises, the police made a number of errors. First, they described the house as a single family dwelling where Moore lived with his parents. In fact, it was a two-family house consisting of two separate apartments, one occupied by Moore, and one occupied by his parents. While from all outward appearances it was a single family house, SE had visited in the house for two weeks and presumably was aware of the living conditions of Moore and his parents. The warrant as issued permitted the officers to search the entire premises including the separate living quarters occupied by the parents.

Second, the affidavit and the warrant cite inapplicable statutes and the warrant

signed by the judge authorized a "no knock" entry into the house even though the no knock statute had been repealed in 1975. In fairness to both the officers and the judge, the events took place during the early morning hours of June 9, 1982 at a time when the officers were understandably in a hurry to search the two houses.

Third, the affidavit did not describe the garage, however, the officers searched the garage without the actual consent of Moore or his parents. The Court notes that although Moore stored goods in the garage, his parents did as well, and had the authority to consent to any search of the garage. However, the officer did not request the permission of the Hendersons to search the garage; he merely asked Mr. Henderson to accompany him to the garage for the search. The Hendersons simply did as they were instructed.

■ Although a number of errors were committed in securing the search warrant, none of them affect the final disposition of the motion. The officers in preparing the warrant cited to inapplicable statutes; nevertheless, it is clear that a judge of the Superior Court had the authority to authorize a search warrant pursuant to D.C.Code Ann. § 33–565 (1981). While Officer Hickson was not present when the other officers entered 514 Missouri Avenue and began their search, he did arrive on the scene sometime thereafter. The Court finds no violation of D.C.Code Ann. § 33–565(f).

■ The warrant signed by the judge authorized a no knock entry, and as noted, the statute authorizing no knock entries was repealed in 1975. It is quite clear however that the officers knocked, identified themselves, and were allowed to enter the premises by Mr. and Mrs. Henderson. Likewise, although the warrant authorized the search of the entire premises, including the apartment occupied by the Hendersons, and although the officers did search the Hendersons' apartment, the cocaine and marijuana were found in Moore's apartment. Although the search warrant, did not on its face allow the search of the garage, and the officers searched the ga-

rage without the permission of Moore or his parents, they found nothing in the garage. Since no evidence was found in either the garage or the apartment occupied by the Hendersons, no one was harmed, insofar as this case is concerned, due to the errors contained in the affidavit and the warrant. Clearly, there was probable cause to search Mr. Moore's apartment under the circumstances of this case.

■ Moore complains that the reference to the special employee contained in the affidavit did not recite her reliability and credibility and therefore did not comport with the decisions in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). While Moore correctly notes that the affidavit does not set forth facts relating to the reliability or credibility of SE, issuance of the search warrant was nevertheless proper based upon the totality of the facts set forth in that affidavit. The affidavit states that SE had observed cocaine and marijuana within the premises within the last 48 hours. The affidavit further sets forth that SE had made arrangements with Moore to purchase four ounces of cocaine and thirty pounds of marijuana for $19,600, that SE and the undercover officer met Moore and a companion at the Capital City Inn on June 8, 1982, and that Moore at that time had agreed to sell four ounces of cocaine for approximately $2,200 an ounce. Thus, the independent observations of the undercover officer, and the monitored telephone conversations between SE and Moore, corroborated the representations made by SE and the requirements of *Spinelli* were satisfied.

Taking all of the above matters into consideration, the Court concludes that Moore's motion to suppress the evidence found at 514 Missouri Avenue, N.W. must be denied.

### ORDER

It is hereby

ORDERED that the defendants motions to dismiss the indictment are denied, and it is further

ORDERED that the defendants motion to sever the counts in the indictment are denied, and it is further

ORDERED that Bright's oral motion for a severance and a separate trial is denied, and it is further

ORDERED that the defendants motion to suppress the evidence found in the pick-up truck is denied, and it is further

ORDERED that Moore's motion to suppress the evidence found at 514 Missouri Avenue, N.W., Washington, D.C., is denied, and it is further

ORDERED that this case is set down for a trial on December 1, 1982 at 10:00 a.m., the defendants have been previously advised of that date and have been released on bond.*

* The hearing date of November 16, 1982, is vacated; counsel and the defendants shall next appear for trial on December 1, 1982 at 10:00 a.m., Courtroom 17.